# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO
2017 JAN 13 AM 11:28
JEFFREY P. COLWELL
CLERK
BY_____DEP. CLK

Civil Action No. _____
(To be supplied by the court)

Danielle Alfaro _____, Plaintiff,

v.

Bonnie McLean _____,

Dane Torbenson _____,

Alexandra White _____,

Carlos Armando Samour, Jr. _____,

_____,

_____,

_____,

_____, Defendant(s).

(List each named defendant on a separate line.)

**COMPLAINT USC42 1983: VIOLATION OF CIVIL RIGHTS**

(Rev. 07/06)

2

# PARTIES

1. Plaintiff __Danielle Alfaro__ is a citizen of __Colorado__
   who presently resides at the following address:
   2976 South Moline Place Aurora CO 80014

2. Defendant __Bonnie McLean__ is a citizen of __Colorado__
   who live(s) at or is/are located at the following address:
   7325 South Potomac Street Suite #100 Centennial CO 80112

3. Defendant __Dane Torbenson__ is a citizen of __Colorado__
   who live(s) at or is/are located at the following address:
   12625 East Euclid Drive, Centennial CO 80111

   (Attach a separate page, if necessary, to list additional parties.)

# JURISDICTION

4. Jurisdiction is asserted pursuant to following statutory authorities:
   Article III of the US Constitution *"In all cases affecting ambassadors, other public ministers and consuls, and those in which a state shall be party, the Supreme Court shall have original jurisdiction."*

5. Briefly state the background of your case:

Plaintiff, Danielle Alfaro, was in an almost 4 year relationship with Matthew Duerksen. That relationship progressed into a marriage on October 13th, 2013. While plaintiff was pregnant with their daughter plaintiff's husband was violent, and at times plaintiff had to barricade herself into their bedroom. On September 14th, 2015 plaintiff's husband decided to leave and not return, asking for a divorce. On September 19th, 2015 plaintiff returned to find husband had torn the house apart (pictures were included in the subsequent case file kept by plaintiff's legal representation). Based on a previous miscarriage, plaintiff decided to vacate the marital home prior to its sale on November 19th, 2015. All of these facts were disclosed during plaintiff's divorce proceedings. In re: dissolution of marriage (Case number 2015DR30961 Division 22 Arapahoe County Court) filed on October 6th, 2015 to include child custody and parenting responsibilities upon the birth of their daughter, born in February 2016. An Emergency hearing via telephone conference was held on March 23rd, 2016, Temporary Orders hearing held on April 13th, 2016, Permanent Orders hearing held on August 30th, 2016, and Final Rulings were made via telephone conference September 28th, 2016. Plaintiff testified that husband, now ex-husband, Matthew Duerksen, had a history of domestic violence, supported by photographs, and abuse of alcohol, supported by a DUI arrest on July 17, 2016. An appraiser, Margaret Olsen, was hired as an expert who testified to marital assets. A Child Family Investigator, Bonnie Saltzman, was hired to give recommendations to the court. Post-dissolution hearings were held on November

3

21st, 2016 and December 21st, 2016 both were held without service of process, or plaintiff's knowledge or presence. On December 26th, 2016 service for motions of contempt of court were received at 11:56 am via process server. Plaintiff having knowledge will be at the subsequent hearing.

(Rev. 07/06)

4
## PARTIES CONTINUED

Defendant __Alexandra White__ is a citizen of __Colorado__
who live(s) at or is/are located at the following address:
12625 East Euclid Drive, Centennial CO 80111

Defendant __Carlos Armando Samour, Jr.__ is a citizen of __Colorado__
who live(s) at or is/are located at the following address:
7325 South Potomac Street Suite #100 Centennial CO 80112

(Rev. 07/06)

5
# FIRST CLAIM FOR RELIEF
## AND SUPPORTING FACTUAL ALLEGATIONS
(Please number your paragraphs and attach any necessary additional pages.)

1. Violation of Constitutional and Civil Rights by defendants Bonnie McLean, and Dane Torbenson upon holding hearings on November 21st, 2016 and December 21st, 2016 without plaintiff's notice or knowledge.
    a. Violation of **US Constitution Fifth Amendment** requiring *"due process of law"* be part of any proceeding that denies a citizen *"life, liberty, or property"*. Plaintiff alleges that **Stare decisis** was ignored (Everett v Parker, 2005 Pa. Super. 404 (Pa. Super. Ct. 2005)
    b. Violation of **US Constitution Fourteenth Amendment** section one stating *"nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws"*. Plaintiff alleges that **Stare decisis** was ignored (Everett v Parker, 2005 Pa. Super. 404 (Pa. Super. Ct. 2005)
    c. Violation of **Federal Rules of Civil Procedure Rule 4 (Section c1-3, e1-2c)** *"(c) Service. (1) In General. A summons must be served with a copy of the complaint. The plaintiff is responsible for having the summons and complaint served within the time allowed by Rule 4(m) and must furnish the necessary copies to the person who makes service. (2) By Whom. Any person who is at least 18 years old and **not a party** may serve a summons and complaint. (3) By a Marshal or Someone Specially Appointed. At the plaintiff's request, the court may order that service be made by a United States marshal or deputy marshal or by a person specially appointed by the court. The court must so order if the plaintiff is authorized to proceed in forma pauperis under 28 U.S.C. §1915…(e) Serving an Individual Within a Judicial District of the United States. Unless federal law provides otherwise, an individual…may be served in a judicial district of the United States by: (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or (2) doing any of the following: (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode **with someone** of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process."* Plaintiff alleges that **Stare decisis** was ignored (Everett v Parker, 2005 Pa. Super. 404 (Pa. Super. Ct. 2005)
    d. Violation of **Colorado Rules of Civil Procedure Rule 4**: *Service of Process* **(Section a-d1, g1)** *"(a) To What Applicable. This rule applies to all process except as otherwise provided by these rules. (b) Initial Process. Except in cases of service by publication… the complaint and a blank copy of the answer form shall be served with the summons. (c) By Whom Served. Process may be served within the United States or its Territories by any person whose age is eighteen years or older, not a party to the action. (d) Personal Service. Personal service shall be as*

(Rev. 07/06)

6

follows: *(1) Upon a natural person whose age is eighteen years or older by delivering a copy thereof to the person, or by leaving a copy thereof at the person's usual place of abode,* **with any person** *whose age is eighteen years or older and who is a member of the person's family, or at the person's usual workplace, with the person's supervisor, secretary, administrative assistant, bookkeeper, human resources representative or managing agent; or by delivering a copy to a person authorized by appointment or by law to receive service of process... (g) Other Service. Except as otherwise provided by law, service by mail or publication shall be allowed only in actions affecting specific property or status or other proceedings in rem... The party desiring service of process by mail or publication under this section (g) shall file a motion verified by the oath of such party or of someone in the party's behalf for an order of service by mail or publication... The court, if satisfied that* **due diligence has been used to obtain personal service** *or that efforts to obtain the same would have been to no avail, shall: (1) Order the party to send by* **registered or certified mail** *a copy of the process addressed to such person at such address, requesting a* **return recipe signed by the addressee only**." Plaintiff alleges that **Stare decisis** was ignored (Everett v Parker, 2005 Pa. Super. 404 (Pa. Super. Ct. 2005)

e. Violation of **12 CFR 263.9**: *Ex Parte Communications* preventing "*any material oral or written communication relevant to the merits of an adjudicatory proceeding that was...* **on reasonable prior notice to all parties that takes place between**: *(i) An interested person outside the Board (including such person's counsel); and (ii) The administrative law judge handling that proceeding...*" (Dep't of Children's Servs. V K.G. (in re" K.L.H.) 2003 Tenn. App. LEXIS 863 (Tenn. Ct. App. 2003)

   i. Violating **American Bar Association Model Code for Judicial Conduct: Cannon 2 Rule 2.6(Section a-b)** "*Ensuring the Right to Be Heard. (A) A judge shall accord to every person who has a legal interest in a proceeding, or that person's lawyer, the right to be heard according to law.* *(B) A judge may encourage parties to a proceeding and their lawyers to settle matters in dispute but shall not act in a manner that coerces any party into settlement.*" **Rule 2.9(Section A1a-b, B, D)** "*(A) A judge shall not initiate, permit, or consider ex parte communications, or consider other communications made to the judge outside the presence of the parties or their lawyers, concerning a pending* * *or impending matter,* * *except as follows:(1) When circumstances require it, ex parte communication for scheduling, administrative, or* **emergency purposes**, *which does not address substantive matters, is permitted, provided:(a) the judge reasonably believes that* **no party will gain a procedural, substantive, or tactical advantage** *as a result of the ex parte communication; and (b) the judge* **makes provision promptly to notify all other parties** *of the substance of the ex parte communication, and* **gives the parties an opportunity to respond**... *(B) If a judge inadvertently receives an unauthorized ex parte communication bearing upon the*

(Rev. 07/06)

7

*substance of a matter, the judge shall make provision promptly to notify the parties of the substance of the communication and provide the parties with an opportunity to respond... (D) A judge shall make reasonable efforts, including providing appropriate supervision, to ensure that this Rule is not violated by court staff, court officials, and others subject to the judge's direction and control."* Loudermilk v Loudermilk. 693 So. 2d 666 (Fla. App. 2 Dist. 1997). Plaintiff states there is no emergency purpose to the proceedings held on October 21, 2016 and November 21, 2016, unlike the Emergency Hearing occurring on March 23, 2016 when Plaintiff's then husband, Matthew Duerksen, threatened legal action against the plaintiff if she took their minor child on a vacation Mr. Duerksen had previously agreed to.

    **f.** Bonnie McLean allowed Dane Torbenson, as legal representative for Matthew Duerksen, to bring *frivolous suit*, in violation of **US Rule 11**, of *moot* allegations without *due process*, before the Court as a means for Matthew Duerksen to continue to *harass* and control plaintiff by using the Court to threaten and intimidate, as well as gain physical access. (In Re: Marriage of Reese & Guy, 73 Cal App 4th 1214 (cal. App. 4 Dist. 1999). Violating plaintiff's **Colorado Bill of Rights (Sections 3, 25, 28)**

        **i.** **Colorado Bill of Rights Section 3** *"Inalienable rights. All persons have certain natural, essential and inalienable rights, among which may be reckoned the right of enjoying and defending their lives and liberties; of acquiring, possessing and protecting property; and of seeking and obtaining their safety and happiness"* Including rights pertaining to child custody.

        **ii.** **Colorado Bill of Rights Section 25** *"Due process of law. No person shall be deprived of life, liberty or property, without due process of law."* Including, scheduling hearings, and proceeding without good service to a party of the matter. Two separate hearings have now taken place without plaintiff's service, notice or prior knowledge.

        **iii.** **Colorado Bill of Rights Section 28** *"Rights reserved not disparaged. The enumeration in this constitution of certain rights shall not be construed to deny, impair or disparage others retained by the people."*

(Rev. 07/06)

8
## SECOND CLAIM FOR RELIEF
## AND SUPPORTING FACTUAL ALLEGATIONS
(Please number your paragraphs and attach any necessary additional pages.)

2. Violations of Constitutional and Civil Rights by Bonnie McLean, and Dane Torbenson in Ordering Citation of Remedial Contempt of Court and Punitive Contempt of Court.
   a. Violation of **US Constitution Eighth Amendment** preventing *"cruel and unusual punishment"*
      i. Seeking punitive contempt of court is *cruel and unusual punishment* due to exigent circumstances placing plaintiff in **imminent danger**.
         1. All court officials, including opposing counsel, and the opposing party (including Matthew Duerksen's father, Christopher Duerksen, whom is a retired attorney advising him on this matter) have knowledge that Plaintiff's father is an eighteen year veteran of the Denver Police Department and Plaintiff's brother is a sheriff's deputy within the Arapahoe County Jail.
      ii. Seeking remedial contempt of court financially is *cruel and unusual* punishment since the opposing party is aware that plaintiff is unemployed, and in debt for housing, transportation, and financial support, including attorney's fees.
      iii. Bonnie McLean having ordered opposing counsel, Dane Torbenson, to file Contempt of Court is a responsible party for these above mentioned violations.
   b. Violation of **Colorado Revised Statutes 13-14-101(Section 2)** *Civil protections against coercion*, defined as *"includ[ing] compelling a person by force, threat of force, or intimidation to engage in conduct from which the person has the right or privilege to abstain"*.
      i. Noted in the "Order to Issue Citation and Citation to Show Cause" Section for Remedial Contempt number 31: *"**Mother may purge the remedial contempt by agreeing to and complying with all of the terms of paragraph 30 above.**"*
         1. Paragraph 30 reads: ("***Father requests the Court impose the following remedial sanctions against Mother: a. Provisions of make-up parenting time for the parenting time denied Father by Mother. b. Provision of make-up parenting time for the parenting time father has lost as a result of the additional transportation time forced upon Father by Mother's unilateral change of the exchange location. c. Mother must compensate Father for the additional costs incurred by Father as a result of Mother's unilateral change of the exchange location. d. Payment of Father's attorney's fees incurred bringing this remedial contempt action.***")
      i. Violation of **Colorado Revised Statutes 13-17-102 (Section 4)** *"(4) The court shall assess attorney fees if, upon the motion of any party or the court itself, it finds that an attorney or party brought or defended an*

*action, or any part thereof, that* **lacked substantial justification** *or that the action, or any part thereof, was interposed for delay or* **harassment** *or if it finds that an attorney or party unnecessarily expanded the proceeding by other improper conduct, including, but not limited to, abuses of discovery procedures available under the* **Colorado rules of civil procedure** *or a designation by a defending party under section* **13-21-111.5 (3)** *that lacked substantial justification. As used in this article, "lacked substantial justification" means substantially frivolous,* **substantially groundless***, or* **substantially vexatious.** *"* Plaintiff alleges these proceedings are a means to further *harass* and *coerce* plaintiff.

  ii. Plaintiff also received *harassing* and *threatening* emails, from Dane Torbenson, only after she was without legal representation, a job, and she was caring for a minor child post facial surgery.

    1. An attached *"invoice for preparation of the transcript from 09-28-16 hearing"* and requesting plaintiff to *"remit your portion, payable to our firm"* sent by way of paralegal, Lacey Kalwarf.

    2. Plaintiff responded that *"previous counsel on Oct. 21st by email [stated] "His counsel did receive the transcript for the Order and filed it yesterday with the Court... He did not request that you contribute to the cost."*

    3. Dane Torbenson replied, *"I have now requested that you contribute to the cost. Shall I inform Judge McLean that you are refusing to do so?"* A threat of *coercion*, as the judge ruled biasedly during the case. Violating **Colorado Revised Statutes 18-9-111** *Harassment* **(Section e)** *"Directly or indirectly initiates communications with a person or directs language toward another person, anonymously or otherwise, by telephone... or other interactive electronic medium in a manner intended to harass or threaten..."*

 c. Violations by Dane Torbenson, as Matthew Duerksen's legal representative, of **31 USC 3729**: *False Claims* **(section A(a))** *"knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval"* violating **Federal Rules of Civil Procedure Rule 11 (Section b1)** *"Representations to the Court. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation"* and **Colorado Revised Statutes 18-8-503** *Perjury in the second degree* **(Section 1)** *"(1) A person commits perjury in the second degree if, other than in an official proceeding, with an intent to mislead a public servant in the performance of his duty, he makes a materially false statement, which he does not believe to be true, under an oath required or authorized by law"*

(Rev. 07/06)

10

i. These false claims are defamation per se under **Colorado Revised Statute 18-13-105** *Criminal libel.* **(Section 1)** (1) *A person who shall knowingly publish or disseminate, either by written instrument, ...any statement or object tending to... impeach the honesty, integrity, virtue, or reputation or expose the natural defects of one who is alive, and thereby to expose him to public hatred, contempt, or ridicule"*
   1. Plaintiff's career as a massage therapist is largely based on and impacted by her reputation and integrity as an individual.
   2. Opposing counsel has incorrectly alleged unilateral changes to the court orders when both parties communicated an offer and acceptance, an agreement, to change creating a new contract.
   3. Missed parenting time was due to the minor child, who was under 9 months old at the time, recovering from facial surgery on November 1st, 2016. Matthew Duerksen was advised by the nurse and the surgeon, while the child was in recovery, that minor child would need to be home recuperating for the next week until a follow up visit. All physicians advised to keep her in a hygienic environment and out of the sun. Mr. Duerksen was angry that he could not take minor child to *"play in the grass"*, as the supporting documents of talkingparents.com conversations will show. Both parents were told as long as this follow up goes well no surgical follow ups would be needed for at least 6 months and no further surgical considerations would be made for an addition 6-12 months. From then, plaintiff received a phone call on November 11th, 2016, from a nurse informing her that a surgical follow up had been scheduled by Mr. Duerksen for November 16th, 2016, during a time he did not have visitation and with an out of network provider. Upon trying to cancel or reschedule the appointment, plaintiff was told she could not alter appointment because Mr. Duerksen had told the nurse that she was a problem and did not have the authority to make a decision about changes to the appointment. The nurse informed plaintiff, she would need to contact Mr. Duerksen directly and that only he could alter the appointment. This appointment was made <u>unilaterally and was unnecessary</u>, the surgeon cancelled the appointment, advising the same instructions for follow up that both parents received the day of minor child's surgery. Mr. Duerksen then again <u>unilaterally</u> scheduled another <u>unnecessary</u> appointment, this time in network, with a plastic surgeon for an evaluation of the now 10 month old child. This surgeon stated again the same instructions and timeline all previous physicians had; instructions advising extreme caution and precautions to sun exposure, and follow up in <u>12 months</u> if the child has any difficulties presented due to scarring, and that breast feeding would be of great benefit in the healing process.

(Rev. 07/06)

12
# THIRD CLAIM FOR RELIEF
## AND SUPPORTING FACTUAL ALLEGATIONS
(Please number your paragraphs and attach any necessary additional pages.)

3. Violations made by Bonnie McLean during pre-decree dissolution of marriage and child custody and parental responsibility case.
   a. **Colorado Bill of Rights Colorado Bill of Rights (Section 6, 29, 30b)**
      i. **Section 6** *"Equality of justice. Courts of justice shall be open to every person, and a speedy remedy afforded for every injury to person, property or character; and right and justice should be administered without sale, denial or delay."* The Court refused to acknowledge the validity of the mutually agreed upon expert, Margaret Olsen, retained by both parties; allowing Mr. Duerksen to delay the case, and intentionally hide assets from the expert and plaintiff. The expert had to rely on the evidence presented to her by the plaintiff, roughly 1,000 pictures, estimating a worth of over $50,000 to this small sample of Mr. Duerksen's assets. Assets to which by Mr. Duerksen's own words include *upwards of 400,000 pieces*. As a US citizen plaintiff is entitled to the protections and guarantees awarded in previous cases. **Stare Decisis** (In re: Marriage of Denise Rossi & Thomas Rossi. 2001, Cal. App. 2d 4 (Cal. Ct. App. 2 Dist. 4 Div. 2001).
      ii. **Section 29** *"Equality of the sexes. Equality of rights under the law shall not be denied or abridged by the state of Colorado or any of its political subdivisions on account of sex"*. Parental custody orders were made because of parent's age (both plaintiff, and her then husband, were 27 years of age), and without taking plaintiff's evidence towards breastfeeding benefits and needs collected from the ***World Health Organization, UNICEF, La Leche League***, and plaintiff's assigned nurse through the ***Nurse Family Partnership***. Bonnie McLean stated, during Final Rulings, *"Both of these parents are young, and they're both immature... another issue of -- of this control is the nursing issue. And I -- I want to go on record here saying I am a huge, huge supporter of breastfeeding. I believe that mom -- mother's milk is -- is liquid gold, and so I don't want to do anything to interfere with that, within reason. You know, there is a huge body of research out there that -- that nursing is -- is best for the babies, and so you know, we have to support that as much as possible. There's -- there's a million reasons why it's -- it is the best process. However, you can't use nursing as a reason to deny Father parenting time. Mother mentioned, and it was upheld on hearsay, but she mentioned something about that -- that pumping leads to breast -- a breakdown of breast milk, and she found that on the internet."*
      iii. **Section 30b** *"No Protected Status Based on Homosexual, Lesbian or Bisexual Orientation. Neither the State of Colorado, through any of its branches or departments... shall enact, adopt or enforce any statute,*

(Rev. 07/06)

13

regulation, ordinance or policy whereby homosexual, lesbian or bisexual orientation, conduct, practices or relationships shall constitute or otherwise be the basis of or entitle any person or class of persons to have or claim any minority status, quota preferences, protected status or claim of discrimination*".*

1. During Final Rulings Conference, as shown in the transcript, Bonnie McLean references her reasons for ruling against *"domestic violence by preponderance of evidence"* as being supported by *"the parties... engag[ing] in a some alternative lifestyle"*
    a. Matthew Duerksen's interrogatories included a statement blaming plaintiff's *"incredibly bisexual"* nature as the reason for *"engaging in an alternative lifestyle"* to excuse plaintiff's allegations of domestic violence.

iv. Failure to adhere to **Colorado Revised Statues 18-6-800.3** and **Colorado Revised Statues 14-10-124** *Best Interests of child* **(Section1.3a)**
*""Domestic Violence" means an act or threatened act upon a person with whom the actor is or has been involved in an intimate relationship"*.

1. Domestic Violence perpetrated by Matthew Duerksen was testified to and admitted to by him under oath. Transcripts of the Permanent Orders Hearing will show, Mr. Duerksen admitted to *"choking [the plaintiff]"* and to evidence towards a *"recent DUI arrest"*. Bonnie McLean during Final Rulings, transcripts will show, stated *"was there low level domestic violence at the end of the relationship? Perhaps. Was it exacerbated by Dad's drinking towards the end? Perhaps. That there is some evidence there, however, you got to go back to the statute, and the statute says that the Court has to find domestic violence by a preponderance of the evidence, and the Court finds that -- that standard -- that burden has not been met by a preponderance of the evidence... As to Dad's drinking, I think he minimized it. I think that the drinking increased during the end of the relationship, and I tell you what, it happens in a lot of cases. People are upset, they're depressed, they're angry, and they drink"* These statements were used when ruling Child Custody and Joint Parental Responsibilities.
2. These facts were a consideration by the Child Family Investigator, Bonnie Saltzman. Her recommendation was for sole decision-making to be awarded to the plaintiff. Bonnie McLean prioritized *hearsay* over the evidence, federal and state laws, and recommendations given.

v. Failure to adhere to **18 USC Code 1621** *"Whoever— (1)having taken an oath before a competent tribunal, officer, or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify, declare, depose, or certify truly, or that any written testimony, declaration, deposition, or certificate by him subscribed, is true, willfully*

(Rev. 07/06)

14

and contrary to such oath states or subscribes any material matter which he does not believe to be true; or (2)in any declaration, certificate, verification, or statement under penalty of perjury as permitted under section 1746 of title 28, United States Code, willfully subscribes as true any material matter which he does not believe to be true; is guilty of perjury" and **Colorado Revised Statutes 18-8-502** *Perjury in the First Degree* **(Section 1)** *"(1) A person commits perjury in the first degree if in any official proceeding he knowingly makes a materially false statement, which he does not believe to be true, under an oath required or authorized by law"*. United States v. Dunnigan (91-1300), 507 U.S. 87 (1993).

    1. Transcripts will show, during the permanent orders hearing, after being advised of his Fifth Amendment rights, Mr. Duerksen **admitted to** *"choking [the plaintiff]"* and to evidence towards a *"recent DUI arrest"*. Bonnie McLean during Final Rulings, transcripts will show, stated *"was there low level domestic violence at the end of the relationship? Perhaps. Was it exacerbated by Dad's drinking towards the end? Perhaps... As to Dad's drinking, I think he minimized it. I think that the drinking increased during the end of the relationship, and I tell you what, it happens in a lot of cases. People are upset, they're depressed, they're angry, and they drink"*

  b. Denying disclosure of assets for complete disposition of property **CRS. 14-10-113** Failure to adhere to doctrine of **Stare Decisis** (In re: Marriage of Denise Rossi & Thomas Rossi. 2001, Cal. App. 2d 4 (Cal. Ct. App. 2 Dist. 4 Div. 2001).

    *i.* Matthew Duerksen's complete records were never disclosed violating Colorado divorce instructions **Mandatory Disclosure Form 35.1 (Section g)** reference to **Colorado Rule of Civil Procedure 16.2(Section e)(2).** *"Investments. The most recent account statements or other documents identifying each investment in which a party has any personal or business interest, and stating its current value"*. These records proving the marital worth of his investment in sports memorabilia were never disclosed. Mr. Duerksen communicated, via email, to the expert witness, Margaret Olsen, that he possessed *"over 300,000-400,000 baseball cards"* which did not include the other memorabilia items possessed and asserted that *"the majority of my collection was purchased/obtained pre-marital"* but never provided any evidence to support this claim.

        1. Plaintiff provided Ms. Olsen all of the photographs in her possession of the collection that was located within the marital joint home.

    ii. Expert witness, Margaret Olsen, testimony was dismissed by Bonnie McLean, stating and transcripts will show, it was comparing *"apples to oranges"* because Mr. Duerksen was not selling the collection in the more reputable places. Although he buys and sells them full time for a living.


    **iii.** Bonnie McLean ruled, and transcripts will support, this collection was not a marital asset because they were *"a hobby"*, despite the fact that marital funds were used to continue this collection and Bonnie McLean states *"he made this his career choice"*. This substantial investment was ruled to be a decision Bonnie McLean would not *"nickel and dime"* and plaintiff was awarded nothing.

        1. Failure to adhere to **Colorado Revised Statutes 13-17-102 (Section 4)** *"(4) The court shall assess attorney fees if, upon the motion of any party or the court itself, it finds that an attorney or party brought or defended an action, or any part thereof, that **lacked substantial justification** or that the action, or any part thereof, was interposed for **delay** or harassment or if it finds that an attorney or party unnecessarily expanded the proceeding by other improper conduct, including, but not limited to, **abuses of discovery procedures** available under the **Colorado rules of civil procedure** or a designation by a defending party under section 13-21-111.5 (3) that lacked substantial justification."*

  **c.** Failure to adhere to **US Rule 802**: *"Hearsay is not admissible"*

    **i.** Bonnie McLean during the final rulings hearing stated that plaintiff made tips not claimed, putting on public record allegations of criminal conduct by the plaintiff.

    **ii.** The court, by way of Bonnie McLean, has acted prejudicially and with bias in its continual favorable rulings towards Matthew Duerksen. Ignoring direct witness testimony, the Child Family Investigator recommendations, photographic evidence, and direct expert witness in favor of *hearsay* by a party to the case.

  **d.** Violation to Plaintiff's **Freedom of Choice**

    **i.** Orders were made for a Level II parenting class to be taken. Opposing Counsel, Dane Torbenson, argued against the course that was agreed upon and supported this argument by claiming that one of plaintiff's objections to the recommended course, being cost, was unacceptable because plaintiff received *"a $10,500 win-fall"* in the awarding of **marital assets** from a **joint investment account**.

    **ii.** Orders were made by Bonnie McLean denying plaintiff physical protection, despite plaintiff's request at the temporary orders hearing for a protection order to be issued. A denial of this request was given because of the time between alleged incidents and the date of this hearing, violating **Colorado Revised Statute 13-14-104.5(Section 1, 7)** *"Procedure for temporary civil protection order. (1) (a) Any municipal court of record, if authorized by the municipal governing body; any county court; and any district, probate, or juvenile court shall have original concurrent jurisdiction to issue a temporary or permanent civil protection order against an adult or against a juvenile who is ten years of age or older for any of the following purposes: (I) To prevent assaults and threatened*

16

bodily harm; (II) **To prevent domestic abuse**; (III) *To prevent emotional abuse of the elderly or of an at-risk adult; (IV) To prevent sexual assault or abuse; and (V) To prevent stalking. (b) To be eligible for a protection order, the petitioner does not need to show that he or she has reported the act that is the subject of the complaint to law enforcement, that charges have been filed, or that the petitioner is participating in the prosecution of a criminal matter... (7) (a) A temporary civil protection order may be issued if the issuing judge or magistrate finds that an imminent danger exists to the person or persons seeking protection under the civil protection order. In determining whether an imminent danger exists to the life or health of one or more persons, the court shall consider all relevant evidence concerning the safety and protection of the persons seeking the protection order.* **The court shall not deny a petitioner the relief requested because of the length of time between an act of abuse or threat of harm and the filing of the petition for a protection order.***"* Further, disregarding plaintiff's right to choice, Court orders force plaintiff to be in the same room with Mr. Duerksen during doctor's appointment for the minor child, despite the plaintiff testifying to these appointments being used by Mr. Duerksen to continue to harass, intimidate, stalk, and physically assault her. Plaintiff has no desire to share space, now or in the future, with plaintiff's now ex-husband. Yet, the Courts, by way of Bonnie McLean, determined plaintiff should have no protections.

  ***iii.*** Orders were made to provide Matthew Duerksen with sole discretion to determine minor child's parenting time despite testimony stating it would endanger plaintiff employment. Plaintiff advised Mr. Duerksen again via TalkingParents.com on September 30, 2016 at 7:51am. This order resulted in costing plaintiff her employment

(Rev. 07/06)

17
# FOURTH CLAIM FOR RELIEF
## AND SUPPORTING FACTUAL ALLEGATIONS
(Please number your paragraphs and attach any necessary additional pages.)

4. Violations of all ruling bodies within the entirety of this case.
   a. Carlos Armando Samour, Jr., as supervising official to Bonnie McLean, and Alexandra White, as supervising agent to Dane Torbenson, are responsible parties as supported by the **American Bar Association Model Code for Judicial Conduct: Cannon 2 Rule 2.15** : *Responding to Judicial and Lawyer Misconduct* **(Section a-d)** *"(A) A judge having knowledge\* that another judge has committed a violation of this Code that raises a substantial question regarding the judge's honesty, trustworthiness, or fitness as a judge in other respects shall inform the appropriate authority.\*(B) A judge having knowledge that a lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question regarding the lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects shall inform the appropriate authority. (C) A judge who receives information indicating a substantial likelihood that another judge has committed a violation of this Code shall take appropriate action. (D) A judge who receives information indicating a substantial likelihood that a lawyer has committed a violation of the Rules of Professional Conduct shall take appropriate action."*
      i. A copy of the December 14th, 2016 cease and desist letter plaintiff wrote and notarized, based on the suspicion plaintiff had that hearings were taking place without receiving prior process of service or knowledge, was sent to all defendants and another was notarized and sent **certified mail** to only Carlos Armando Samour, Jr. on December 29th, 2016 after plaintiff received service for the "Order of Citation and Citation to Show Cause" for Contempt of Court" scheduled January 24, 2017.
   b. Violations by the Court, by way of Bonnie McLean, of **American Bar Association Model Code for Judicial Conduct: Cannon 2 Rule 2.2:** *"Impartiality and Fairness A judge shall uphold and apply the law,\* and shall perform all duties of judicial office fairly and impartially.\*"* **Rule 2.3** *Bias, Prejudice, and Harassment* **(Section a-c)** *"(A) A judge shall perform the duties of judicial office, including administrative duties, without bias or prejudice. (B) A judge shall not, in the performance of judicial duties, by words or conduct manifest bias or prejudice, or engage in harassment, including but not limited to bias, prejudice, or harassment based upon race,* **sex***, gender, religion, national origin, ethnicity, disability,* **age***,* **sexual orientation***, marital status,* **socioeconomic status***, or political affiliation, and shall not permit court staff, court officials, or others subject to the judge's direction and control to do so. (C) A judge shall require* **lawyers in proceedings** *before the court to refrain from manifesting bias or prejudice, or* **engaging in harassment***, based upon attributes including but not limited to race,* **sex***, gender, religion, national origin, ethnicity, disability,* **age***,* **sexual orientation***, marital status,* **socioeconomic status***, or political affiliation, against parties, witnesses, lawyers, or others."* **Rule 2.5**

(Rev. 07/06)

*Competence, Diligence, and Cooperation* (**Section a-b**) *"(A) A judge shall perform judicial and administrative duties, competently and diligently. (B) A judge shall cooperate with other judges and court officials in the administration of court business."* Bonnie McLean has acted prejudicially and with bias in continuing favorable rulings towards Matthew Duerksen. Ignoring witness testimony, photographic evidence, direct expert witness, and participated in *ex parte* communications in favor of *hearsay* by a party to this case.

- i. **Bradley, J. Boyd v U.S., 116 U.S. 035, 6 Sup. Ct 535, 29 L. Ed. 746** *"The Court had a duty to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments"*
    1. The Court, via Bonnie McLean, has acted in violation of **Stare Decisis** which *"promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process"*, instead continually allowing *hearsay* and favorable rulings towards Matthew Duerksen to take precedence over plaintiff's **constitutional** and **civil rights**.
- ii. Violating **Colorado Rules of Civil Procedure 97** *"Change of Judge. A judge shall be disqualified in action in which he is interested or prejudice"* and **American Bar Association Model Code for Judicial Conduct: Cannon 2 Rule 2.11(Section A)** *"Disqualification. (A) A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality\* might reasonably be questioned, including but not limited to the following circumstances: (1) The judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge\* of facts that are in dispute in the proceeding."*

(Rev. 07/06)

19
## REQUEST FOR RELIEF

Plaintiff requests the following relief:
1. Trial by Jury
2. **Federal Rules for Civil Procedure 9.1A and USC 1983 4.8.1** *Compensatory damages* for:
   a. The plaintiff's loss of income, estimated to be $2,000 a month.
   b. The debt incurred by plaintiff due to the loss of employment, estimated to be $12,500.
   c. The plaintiff's loss of marital assets.
   d. The maximum allowable by law for the constitutional violations plaintiff suffered.
   e. The maximum allowable by law for the plaintiff's mental anguish, emotional distress, impairment of reputation, personal humiliation, pain and suffering, and continual fear of persecution and prosecution in the efforts to raise a child within this divorce situation while having the court attempt to be a party to plaintiff's parentage.
      i. (Bolden v. Southeastern Pennsylvania Transp. Authority, 21 F.3d 29, 36 (3d Cir. 1994).
      ii. (Memphis Community School Dist. v. Stachura, 477 U.S. 299, 306 (1986)
3. **Federal Rules for Civil Procedures 9.1B and USC 1983 4.8.3** *Punitive damages* for:
   a. Defendant's willful and malicious unlawful conduct
   b. Defendant's reckless and callous indifference to the federally protected rights of the plaintiff.
      i. (Memphis Community School Dist. v. Stachura, 477 U.S. 299, 306 n.9 (1986).
      ii. (Smith v. Wade, 461 U.S. 30, 56 (1983).
4. Each attorney be sanctioned and the public made aware of these ongoing practices, to protect themselves.

Date: 1/13/17

(Plaintiff's Original Signature)

2976 South Moline Place

(Street Address)

Aurora CO 80014

(City, State, ZIP)

(Telephone Number)

(Rev. 07/06)